Joseph W. Cotchett (SBN 36324)
Thomas E. Loeser, (SBN 202724)
**COTCHETT, PITRE & MCCARTHY, LLP**
840 Malcom Road
Burlingame, CA 94010
Telephone:      (206) 802-1272
Facsimile:      (206)-299-4184
jcotchett@cpmlegal.com
tloeser@cpmlegal.com

and

Karin B. Swope (*pro hac vice* to be filed)
Jacob M. Alhadeff (*pro hac vice* to be filed*)*
**COTCHETT, PITRE & MCCARTHY, LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Telephone:      (206) 802-1272
Facsimile:      (206)-299-4184
tloeser@cpmlegal.com
kswope@cpmlegal.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| JUST JOSH, INC.*, and all others similarly situated*,<br><br>   *Plaintiff*,<br><br>  vs.<br><br>RAKUTEN USA, INC. and EBATES PERFORMANCE MARKETING, INC. d/b/a RAKUTEN REWARDS,<br><br>   *Defendants*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................... 3

II.   FACTS ......................................................................................... 4

   A.   A. Digital Marketers Commission System .................................. 4

   B.   B. The Rakuten Web Browser Extension ..................................... 5

   C.   C. Rakuten Exploits Last Click Attribution ............................... 10

   D.   D. Plaintiff's And The Class's Harm ......................................... 10

III.  JURISDICTION, VENUE, AND CHOICE OF LAW ................................ 11

IV.   PARTIES ...................................................................................... 12

   A.   Plaintiff Just Josh, Inc. ............................................................ 12

   B.   Defendants. .......................................................................... 12

V.    CLASS ACTION ALLEGATIONS .................................................... 12

VI.   STATUTE OF LIMITATIONS TOLLING ............................................ 14

VII.  CAUSES OF ACTION .................................................................... 14

   COUNT ONE: CONVERSION ............................................................ 14

   COUNT TWO: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS. 15

   COUNT THREE: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT ...... 16

   COUNT FOUR: VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY

   ACT 18 U.S.C §§ 2510, *et seq.* ........................................................ 18

   COUNT FIVE: VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT A.R.S §§

   44-1521, *et seq.* .......................................................................... 20

   CONSUMER FRAUD ACT A.R.S §§ 44-1521, *et seq.* .............................. 20

VIII. PRAYER FOR RELIEF ................................................................... 21

Class Action Complaint

Plaintiff Just Josh, Inc. ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Rakuten USA, Inc. and Ebates Performance Marketing, Inc. d/b/a Rakuten Rewards ("Ebates" and, collectively with Rakuten, USA, Inc., "Rakuten" or "Defendants"), seeking monetary damages, restitution, and/or injunctive relief for the proposed Class and Subclass, as defined below. Plaintiff makes the following allegations upon information and belief, the investigation of their counsel, and personal knowledge or facts that are a matter of public record.

## I.       INTRODUCTION

1.     Coupon browser extensions are widely used by online shoppers to identify coupons and discounts on products and services they have already added to their online shopping cart.

2.     According to Defendants, the Rakuten Browser Extension (the "Extension") is a free savings tool that provides users with cash back from thousands of stores, restaurants, and travel. Rakuten's Extension is easily downloaded on desktop and laptop computers and can also be used on mobile devices including both phones and tablets.

3.     Consumers receive cash back from Rakuten's Extension that prompts users at the point of sale, after they have already navigated to the product page. Because of this, the Rakuten Extension is appealing to customers looking for a discount or cash back on a product or service they are already interested in purchasing and have often already added to their online shopping cart.

4.     Rakuten's Extension, however, is designed to steal commissions from online content creators, including but not limited to website operators, online publications, YouTubers, influencers, and other creators in the online community ("Creators").

5.     Creators earn money by directing their followers and viewers to specific products and services, which are linked on their respective platforms and social medial channels. A link used to purchase a particular product at a particular e-commerce site is called an "affiliate link." When a Creator's followers and viewers purchase products and services using an affiliate link,

Class Action Complaint

the Creator gets credit for the referrals and earns commissions on the sales.

6.    Online retailers work with Creators through affiliate marketing programs, which rely on tracking tags and affiliate marketing cookies in order to determine who gets credit for online referrals and product sales.

7.    The Creator is given a specific web link to share with their followers and audience, and if someone clicks on that link, the Creator's unique affiliate marketing cookie populates and credits the Creator with the sale.

8.    However, the Rakuten Extension cheats Creators out of commissions they are entitled to during the checkout process.

9.    As described in more detail throughout this complaint, Rakuten programmed its Extension to systematically appropriate commissions that belong to Creators, like Plaintiff and Class members. It does so by substituting its own affiliate marketing identity code into a shopper's cookie in place of the creator's affiliate marketing identity code, and this happens even though the customer used the Creator's specific affiliate web link to purchase a product or service.

10.    Plaintiff is a Creator whose commission payments were wrongfully misappropriated by Rakuten. Plaintiff brings this case on his own behalf and on behalf of all others similarly situated to recover the damages they have sustained and to enjoin Rakuten's wrongful conduct going forward.

## II.    FACTS

### A.    Digital Marketers Commission System

11.    ECommerce merchants market their products through the use of affiliate marketing commission links provided to influencers and content creators. Creators include YouTubers, bloggers, podcasters, Instagram influencers, TikTokers, and much more. Many Creators and merchants work through affiliate networks that act as intermediary platforms connecting eCommerce merchants with affiliate promoters and managing the technical

implementation. This affiliate marketing industry surged to 15.7 billion in 2023.[1]

12.    Creators earn their commissions by providing specialized tracking links to their audience. These tracking links are unique URLs that connect consumers to merchants' product pages while recording the referral source in a cookie that is stored on the consumer's web browser. This cookie has a defined lifetime, often no more than 90 days, during which time the affiliate can receive credit for the purchase, even if the customer returns to the merchant's site directly.

13.    If the user is directed to the merchant's site by a second affiliate Creator, then the original affiliate marketer's code within the cookie is overwritten, ensuring that only the Creator that generated the last-click receives the commission.

**B.    The Rakuten Web Browser Extension**

14.    The Rakuten Extension is free to use and available through various web browser stores including Google Chrome, Microsoft Edge, Safari, and Firefox.

15.    Rakuten advertises that they have provided customers over $3.6 billion in Cash Back and that they are the #1 cash back shopping extension with over 21 million consumers.[2] Rakuten further states that the average shopper received over $100.00 back from using Rakuten in 2024.[3]

16.    Rakuten tells consumers that merchants pay Rakuten for "sending them shoppers,"[4] but does not tell them that Defendants fund their provision of cash back by hijacking Creator's affiliate marketing commissions after the consumer has already navigated to the purchased product.

17.    Rakuten uses its Extension to take credit for sales commissions it did not generate – sales instead generated from a Creator's unique affiliate marketing link.

18.    Rakuten's Extension does so by altering the tracking tags within the cookies that

---

[1] 18 Affiliate Marketing Statistics for 2025, Rewardful, December 5, 2024,
https://www.rewardful.com/articles/affiliate-marketing-statistics (last visited January 2, 2025).
[2] Rakuten, https://www.rakuten.com/ (last visited Feb. 24, 2025).
[3] *Id.*
[4] *Id.*

Class Action Complaint

1 are read and transmitted during the checkout process and substituting its own tracking tags,

2 holding Rakuten out as the referrer of the product and/or service.

3     19.    Rakuten misappropriates the commission for the sale even if it emanated from an

4 online marketer's specific affiliate marketing link for the product or service.

5     20.    The images below show what happens when an online shopper clicks on a

6 Creator's affiliate link to purchase a product or service and proceeds to "checkout" that product

7 or service. Whether the Creator who actually generated the purchase receives the referral and

8 commission depends on whether the shopper has activated Rakuten's Extension.

9     21.    Image 1 shows Plaintiff's affiliate marketing link that would otherwise ensure that

10 Just Josh received his affiliate commission. Plaintiff's affiliate marketing link then redirects the

11 user to Walmart through the affiliate link indicating that Just Josh referred a consumer to

12 Walmart's website.

Class Action Complaint

**Image 1**: This is a screenshot taken just before a consumer is referred to a merchant's website due to Just Josh's content and recommendations.

22.     Image 2 shows the merchant's website and the inspection panel which shows what is happening in the background before the Rakuten Extension is activated. In this Image, the user clicked on a Creator's affiliate marketing link and is navigating to checkout. At this point, the Rakuten Extension has not been activated. This Image below shows that the campaign and partner cookies value indicate that Just Josh should be credited with a referral.

Class Action Complaint

**Image 2**: This is a screenshot taken during the checkout process at bestbuy.com after a user clicks on Plaintiff Just Josh's affiliate marketing link. The zoomed-in image shows the affiliate marketing cookie correctly attributes Just Josh with the referral and sale of the product, affiliate code 52269.

23.     In this scenario, shown by Images 1 and 2, Just Josh rightfully gets credit for the referral and would receive a commission based on its partnership with the merchant, Walmart, as long as the customer did not engage the Rakuten extension.

24.     However, as shown in Images 3 and 4, Rakuten creates a pop-up, alerting the customer that she can earn cash back with the purchase. If the customer clicks the "Activate" cash back button, the Extension is activated and replaces the Creator's affiliate marketing code with Rakuten's affiliate marketing code as shown below.

Class Action Complaint



**Image 3**: This image is a screenshot captured as the consumer is checking out, having already decided to purchase the product. Without referring the product to the customer, the Rakuten Extension incentivizes the user to activate their cashback Extension.

**Image 4**: This image is a screenshot demonstrating that after the Extension's cashback is activated, Rakuten has hijacked Plaintiff's sales commission through replacing their cookie value, 52269, with Rakuten's affiliate code, 10579.

25.     Rakuten's Extension steals credit for the referral commission even though the Defendants did not recommend the product, inform the consumer about the product in any way, help the shopper identify the product, or offer any coupons for the product. This theft of the commission occurs even though the customer used Just Josh's affiliate link to go to Walmart and

Class Action Complaint

select the referred product.

### C.    Rakuten Exploits Last Click Attribution

26.    When a consumer clicks on a Creator's affiliate marketing link, a tracking tag is generated, allowing the merchant to know who should be credited with the referral and earn a commission for the sale.

27.    The tracking tag is saved on the user's browser within a cookie. The cookie will expire sometime in the future, depending on the specific affiliate program – usually not more than 90 days. This ensures that the online marketer will get credit for the sale, even if it takes a few days for the consumer to make the purchase.

28.    The industry-standard for crediting sales is that the last click determines who gets credit for the sale – known as "last click attribution."

29.    The Rakuten Extension exploits last-click attribution by creating pop-ups during the checkout process or while on the product page. By doing this, Rakuten forces customers to engage with the Extension – via clicks - to receive a discount or earn cash back. When the customer clicks on the Extension, Rakuten takes credit for the sale by replacing the affiliate link as the last-click.

### D.    Plaintiff's And The Class's Harm

30.    On information and belief, Plaintiff and Class Members were harmed by Rakuten because the Extension systematically steals commission payments from their rightful owners – i.e. the Creators who promoted and shared the affiliate link and generated the referral and ultimate sale of a product or service.

31.    When Rakuten replaces Plaintiff's referral tags with their own, Plaintiff has been deprived of referral fees and sales commissions to which he is rightfully entitled.

32.    The Rakuten Extension is activated during millions of online purchases each year. In the absence of the Rakuten Extension, Plaintiff and Class Members would have earned money in the form of referral fees and sales commissions from their respective affiliate marketing links.

33.    Plaintiff continues to devote time and energy to content creation to generate

Class Action Complaint

commissions. Plaintiff accordingly faces future harm in the form of stolen referral fees and sales commissions because the Rakuten Extension continues to steal affiliate marketing commissions with each passing day.

34.     Defendants systematically steal commissions from Creators that promoted the merchant's products and drove customers to their eCommerce stores.

35.     Plaintiff Just Josh, Inc. has worked since 2019 to review electronic products and provide valuable content to viewers through their YouTube channel and website. Just Josh has produced nearly 300 YouTube videos and boasts 288,000 subscribers to his channel. In November 2024, Just Josh's website received 68,000 visitors.

36.     Just Josh has relied on affiliate marketing links on YouTube and its website since its inception. The Just Josh website received 64,000 unique visitors in November 2024.

37.     Just Josh has spent substantial time and money developing a community of viewers that support it and reviewing products for which it provides affiliate links. In November 2024, Just Josh, Inc. Received approximately $50,000 in affiliate link revenue.

38.     Plaintiff continues to devote time and energy to content creation to generate commissions. Plaintiff accordingly faces future harm in the form of stolen referral fees and sales commissions because the Rakuten Extension continues to steal affiliate marketing commissions with each passing day.

### III.     JURISDICTION, VENUE, AND CHOICE OF LAW

39.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, because at least one member of the Class, as defined below, is a citizen of a different state than the Defendants, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

40.     This Court has personal jurisdiction over Defendants because Defendants maintain their principal place of business in San Mateo, California, in this District, they have

sufficient minimum contacts with this District, and have purposefully availed themselves of the privilege of doing business in this District such that they could reasonably foresee litigation being brought in this District.

41.     Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Defendants' principal places of business are located in this District and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

## IV.     PARTIES

### A.     Plaintiff Just Josh, Inc.

42.     Plaintiff Just Josh, Inc. is an S corporation organized and existing under the laws of Arizona. Plaintiff's principal place of business is Scottsdale, Arizona.

### B.     Defendants.

43.     Defendant Rakuten USA, Inc., is a Delaware corporation, with its principal place of business at Rakuten Crimson House West 800 Concar Drive., San Mateo, San Mateo County, California, 94402.

44.     Defendant Ebates Performance Marketing Inc., d/b/a Rakuten Rewards is a Delaware corporation with a principal place of business at 300 Mission Street, San Francisco, CA 94111.

## V.     CLASS ACTION ALLEGATIONS

45.     Plaintiff brings this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed nationwide class (the "Class"), defined as:

> **Nationwide Class:** All persons and entities in the United States who participated in an affiliate commission program with a United States eCommerce merchant and had commissions diverted to Rakuten.

> **Arizona Subclass:** All persons and entities in Arizona who participated in an affiliate commission program with a United States eCommerce merchant and had commissions diverted to Rakuten.

46.     **Numerosity and Ascertainability:** Members of the Class are so numerous that joinder is impracticable. The Class encompasses at least tens of thousands of individuals and entities geographically dispersed throughout the United States, such that joinder of all Class

Class Action Complaint

members is impracticable. There are at least thousands of members of the Subclass, such that joinder of all subclass members is similarly impracticable.

47. **Commonality and Predominance:** This action involves common questions of law and fact which predominate over any question solely affecting individual Class members. These common questions include:

a. Whether Rakuten developed and structured their Extension in a way that unfairly attributes sales referrals to Rakuten;

b. Whether Rakuten was unjustly enriched to the detriment of Plaintiff in the form of commission payments;

c. Whether Rakuten tortiously interfered with Plaintiff and the Class's contractual relationships;

d. Whether Rakuten violated the Computer Fraud and Abuse Act;

e. Whether the system described herein results in Rakuten being awarded commission payments it did not rightfully earn;

f. Whether consumers and Class members have been damaged by Rakuten's conduct; and

g. The nature and scope of appropriate injunctive relief.

48. **Typicality:** Plaintiff's claims are typical of the other Class members' claims because all Class members were comparably injured through Defendants' substantially uniform misconduct, as described above. Plaintiff is advancing the same claims and legal theories on behalf of itself and all other members of the Class that it represents, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and Class members arise from the same operative facts and are based on the same legal theories.

49. **Adequacy:** Plaintiff is an adequate Class representative because its interests do not conflict with the interests of the other members of the Class it seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Class's interest will be fairly and adequately protected by Plaintiff and its counsel.

Class Action Complaint

50.     **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other detriment suffered by Plaintiff and other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be virtually impossible for the Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not: individualized litigation creates a potential for inconsistent or contradictory judgments, increases the delay and expense to the parties, and increases the expense and burden to the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by this Court.

## VI.     STATUTE OF LIMITATIONS TOLLING

51.     All applicable statute(s) of limitations have been tolled by Rakuten's active and knowing concealment and denial of the facts alleged herein. Plaintiff and Class members had no reasonable means of discovering that Rakuten was covertly stuffing cookies and modifying network data to claim commissions for sales it did not legitimately generate.

52.     Rakuten has an ongoing obligation to disclose to Plaintiff and Class members its practice of replacing affiliate marketing tags that identify marketers as the source of referrals, substituting them with its own tracking tags to redirect commissions that rightfully belong to marketers such as Plaintiff and Class members. Due to Rakuten's active concealment of this practice, any statutes of limitations that would typically apply to these allegations have been tolled and suspended.

## VII.     CAUSES OF ACTION

### COUNT ONE
### CONVERSION
#### (ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

53.     Plaintiff incorporates by reference paragraphs 1-52 as if fully set forth herein.

54.     Plaintiff and Class Members possessed or had the right to possess commissions

Class Action Complaint

they earned from referring consumers to products and services sold by eCommerce merchants. Each commission constitutes a specific and identifiable sum.

55.     Rakuten intentionally and substantially interfered with Plaintiff's and Class members' personal property by usurping their commissions and referral fees.

56.     Without proper authorization, Rakuten assumed and exercised the right of ownership over these commissions, in direct hostility to the rights of Plaintiff and Class members, without justification.

57.     Rakuten's wrongful exercise of control over Plaintiff's and Class members' personal property amounts to conversion.

58.     Plaintiff and Class members neither assented to nor ratified Rakuten's interference with their referral fees or commissions.

59.     As a direct and proximate result of Rakuten's conversion, Plaintiff and the Class were harmed.

60.     Rakuten is liable to Plaintiff and the Class for damages and costs permitted by law.

**COUNT TWO**

**TORTIOUS INTERFERENCE**
**WITH CONTRACTUAL RELATIONS**
(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

61.     Plaintiff incorporates by reference paragraphs 1-52 as if fully set forth herein.

62.     Plaintiff and the Class are engaged in contracts or ongoing business relationships with eCommerce merchants. Plaintiff and the Class drive customers to merchant stores through affiliate links, and in return the merchants provide Plaintiff and the Class with commissions. These contracts and economic relationships are ongoing.

63.     Rakuten knew that Plaintiff and the Class worked to drive customers to their merchant partners' websites through affiliate links. Rakuten knew that Plaintiff and the Class received their commissions based on associated unique affiliate codes in cookies, and that the merchants assessed the success of their affiliate program based on these cookies. Rakuten knew

Class Action Complaint

these contractual and business relationships existed.

64.     Rakuten intentionally disrupted Plaintiff and the Class's performance of the contractual and business obligations, or knew that their actions made performance more expensive, difficult, or impossible. Rakuten displaces the codes that identify Creators as the sources of the referral, stuffs their own affiliate code into cookies, and holds itself out as the referrer of the specific products and/or services even though the sale in question emanated from an online marketer's affiliate marketing link. Rakuten intended to usurp commissions from Plaintiff and Class members through the conduct alleged herein or knew that its conduct would appropriate commissions and referral fees from Plaintiff and Class members.

65.     Plaintiff and the Class were harmed by Defendants' conduct because the Rakuten Extension deprives them of commissions and referral fees they rightfully earned as the true drivers of the merchant sales.

66.     As a direct and proximate result of Rakuten's conduct, Plaintiff and the Class suffered economic injury by being deprived of commissions they should have earned through their affiliate links.

67.     As a result of the conduct described above, Rakuten is liable to Plaintiff and the Class for damages in an amount to be determined at trial.

## COUNT THREE
### VIOLATION OF THE COMPUTER
### FRAUD AND ABUSE ACT
(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

68.     Plaintiff incorporates by reference paragraphs 1-52 as if fully set forth herein.

69.     The Computer Fraud and Abuse Act ("CFAA"), enacted in 1986 as part of the ECPA, prohibits the intentional accessing, without authorization or in excess of authorization, of a computer under certain circumstances. 18 U.S.C. § 1030(a).

70.     The CFAA provides that it is unlawful to "intentionally access a computer without authorization or exceed[] authorized access, and thereby obtain[]…information from any protected computer." 18 U.S.C. § 1030(a)(2)(c).

71.     18 U.S.C. § 1030(g) provides a private right of action to "[a]ny person who

Class Action Complaint

suffers damage or loss by reason of a violation of this section[.]"

72.    The CFAA further provides that it is unlawful to "knowingly and with intent to defraud, access[] a protected computer without authorization or exceed[ing] authorized access" and thereby "further[] the intended fraud and obtain[] anything of value…." 18 U.S.C. § 1030(a)(4).

73.    Plaintiff and Defendants, as corporations or legal entities, are "persons" within the meaning of the CFAA. 18 U.S.C. § 1030(e)(12).

74.    A "computer" is defined as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." 18 U.S.C. § 1030(e)(10).

75.    "Exceeds authorized access" is defined as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain." 18 U.S.C. § 1030(e)(6).

76.    A "protected computer" is defined as "a computer . . . which is used in or affecting interstate or foreign commerce or communication…, [or that] has moved in or otherwise affects interstate or foreign commerce." 18 U.S.C. § 1030(e)(2)(B).

77.    Plaintiff's and Class Members' laptops, desktops, smartphones, and tablets constitute a "computer" within the meaning of the CFAA. 18 U.S.C. § 1030(e)(1).

78.    The laptops, desktops, smartphones, and tablets of Plaintiff and Class Members are used in and affect interstate and foreign commerce and constitute "protected computers" within the meaning of the CFAA. 18 U.S.C. § 1030(e)(2)(B).

79.    Defendants violated § 1030(a)(4), by knowingly, and with intent to defraud Plaintiff and Class members, accessing cookies on consumers' browsers containing Plaintiff's and Class members' data, via the Rakuten Extension, and altered that data without authorization or by exceeding authorized access, and by means of such conduct furthered the intended fraud and obtained commissions earned by Plaintiff and Class members.

Class Action Complaint

80.     Defendants' access was without authorization or in excess of authorization, because the purpose of the access was to enact a commission diversion scheme, whereby Defendants surreptitiously used consumers' computers to defraud Plaintiff and Class members by altering Plaintiff's and Class members' data to steal their commissions.

81.     Plaintiff and Class members have suffered damage and loss, aggregating at least $5,000 in value in any 1-year period during the relevant period, including, without limitation, their earned commissions as a result of Defendants' violation of 18 U.S.C. § 1030.

82.     Defendants' unlawful access to and theft of Plaintiff's and Class Members' commissions through unauthorized access of data on consumers' computers caused Plaintiff and Class members irreparable injury. Unless restrained and enjoined, Rakuten will continue such acts. Plaintiff's and Class members' remedies at law are not adequate to compensate them for these threatened injuries, entitling Plaintiff and Class members to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

## COUNT FOUR

### VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT 18 U.S.C §§ 2510, *et seq.*
(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

83.     Plaintiff incorporates by reference paragraphs 1-52 as if fully set forth herein.

84.     The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510 et seq., makes it unlawful for a "person" to "intentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communications." 18 U.S.C. § 2511(1).

85.     18 U.S.C. § 2520(a) provides a private right of action to any person whose wire or electronic communications are intercepted, disclosed, or intentionally used in violation of Chapter 119.

86.     The transmission of Plaintiff's and Class members' unique affiliate source data (i.e., unique ID and coupon code) to the merchant (via the cookie generated by consumer action) qualifies as Plaintiff's and Class Members' "communication" under the ECPA's definition of 18 U.S.C. § 2510(12).

87.     By allowing the Rakuten Extension to intercept and surreptitiously manipulate Plaintiff's and Class members' unique ID and coupon code contained in a cookie on consumers' web browsers, Defendants intentionally intercepted and/or endeavored to intercept the contents of "electronic communications" in violation of 18 U.S.C. § 2511(1)(a).

88.     No party to the electronic communication alleged herein consented to Defendants' interception and manipulation of the electronic communication. Nor could they because Defendants' actions were surreptitious.

89.     18 U.S.C. § 2511(2)(d) provides an exception to 18 U.S.C. § 2511(1), under which: "It shall not be unlawful under this chapter [18 USC §§ 2510 et seq.] for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State."

90.     Defendants do not meet the requirements of the "party exception" to the ECPA because, as detailed herein, the electronic communications intercepted by Defendants were intercepted as part of Defendants' tortious practice of converting commissions and interfering with Plaintiff's and Class members' economic advantage, that is also in violation of federal law, Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

91.     Accordingly, Rakuten violated the ECPA each time they intercepted Plaintiff's and Class members' electronic communications via the Rakuten Extension.

92.     Pursuant to 18 U.S.C. § 2520, Plaintiff and Class members have been damaged by the interception of their electronic communications in violation of the ECPA and are entitled to: (1) appropriate equitable or declaratory relief; (2) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiff and the Class and any profits made by Defendants as a result of its violations, or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; and (3) reasonable attorneys'

Class Action Complaint

fees and other litigation costs reasonably incurred.

**COUNT FIVE**
**VIOLATION OF THE ARIZONA**
**CONSUMER FRAUD ACT A.R.S §§ 44-1521, *et seq*.**
(ON BEHALF OF PLAINTIFF AND THE NATIONWIDE CLASS)

93.    Plaintiff incorporates by reference paragraphs 1-52 as if fully set forth herein.

94.    Rakuten is a "person" as defined by A.R.S. § 44-1521(6).

95.    Rakuten advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

96.    Rakuten engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in the Arizona Consumer Fraud Act, A.R.S. § 44-1521(5)) in violation of A.R.S. § 44-1522(A).

97.    Rakuten's business acts and practices are unfair and deceptive because they wrongfully interfere with Plaintiff's and the Arizona Subclass's business and contractual relationship, causing harm.

98.    Rakuten wrongfully deprives Plaintiff and Subclass members of monies they rightfully earned as the true originators of sales arising from their affiliate marketing links.

99.    Rakuten actually and proximately caused harm to Plaintiff and Subclass members in that, among other things, they suffered economic injury by being deprived of commissions they should have earned from referrals through their affiliate links.

100.    The conduct alleged herein is continuing and there is no indication that Rakuten will cease such activity in the future.

101.    Rakuten's conduct in violation of the Arizona Consumer Fraud Act has caused Plaintiff and Subclass members to be deprived of referral fees and commission payments for sales they rightfully originated. Plaintiff and the members of the Arizona Subclass thus suffered lost money or property as a result of Rakuten's conduct.

102.    As a consequence of the unfair or deceptive acts engaged in by Rakuten, Plaintiff and the Class have been damaged in an amount to be proven at trial, and Plaintiff and the Class

are entitled to an injunction, all other appropriate relief in equity, restitution, the recovery of their actual damages, treble damages, plus attorney's fees and other costs of this action.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that the Court:

A. Certify this case as a class action, and appoint Plaintiff as Class Representative and the undersigned attorneys as Class Counsel;

B. Enter judgment in favor of Plaintiff and the Class;

C. Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and Class members, including reformation of practices to prevent the Rakuten Extension from taking credit for sales it did not originate;

D. Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and/or restitution to which Plaintiff and Class members are entitled;

E. Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

F. Award Plaintiff and Class members pre- and post-judgment interest as provided by law;

G. Enter such other orders as may be necessary to restore to Plaintiff and Class members any money and property acquired by Rakuten through its wrongful conduct;

H. Award Plaintiff and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

I. Award such other and further relief as the Court deems necessary and appropriate.

Class Action Complaint

1

**JURY DEMAND**

2
Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all

3
issues triable as of right.

4
DATED this 27th day of February, 2025.

5

COTCHETT, PITRE & MCCARTHY, LLP

6
By:    _/s/ Thomas E. Loeser_
Thomas E. Loeser, (SBN 202724)

7
Joseph W. Cotchett (SBN 36324)
840 Macolm Road

8
Burlingame, CA 94010

9
and

10
Karin B. Swope (*pro hac vice* pending)
Jacob M. Alhadeff (*pro hac vice* pending)

11
1809 7th Avenue, Suite 1610
Seattle, WA 98101

12
Telephone: (206)-802-1272
Facsimile: (206)-299-4184

13
tloeser@cpmlegal.com

14
kswope@cpmlegal.com
jalhadeff@cpmlegal.com

15
*Attorneys for Plaintiff*

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint